Yunga Uyaguari v. Bondi

BIA
Straus, IJ
A209 238 468

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of August, two thousand twenty-five.

PRESENT:
> ROBERT D. SACK,
> MICHAEL H. PARK,
> ALISON J. NATHAN,
> *Circuit Judges.*

_____

WILSON ALFREDO YUNGA
UYAGUARI,
> *Petitioner*,

v.                                                                          **23-6976**
                                                                            **NAC**

PAMELA BONDI, UNITED STATES
ATTORNEY GENERAL,
> *Respondent.*

_____

**FOR PETITIONER:** Perham Makabi, Kew Gardens, NY.

**FOR RESPONDENT:** Brian Boynton, Principal Deputy Assistant Attorney General; Ilana J. Snyder, Senior Litigation Counsel; Timothy Bo Stanton, Senior Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Wilson Alfredo Yunga Uyaguari, a native and citizen of Ecuador, seeks review of a July 28, 2023 decision of the BIA that both affirmed a January 31, 2019 decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"), and denied remand for further proceedings before the IJ. *In re Yunga Uyaguari,* No. A 209 238 468 (B.I.A. July 28, 2023), *aff'g* No. A 209 238 468 (Immig. Ct. Hartford Jan. 31, 2019). We assume the parties' familiarity with the underlying facts and procedural history.

We have reviewed the IJ's decision as supplemented and modified by the BIA, *i.e.*, assuming credibility, and without considering the grounds for denying

relief that the BIA declined to reach. *See Alvarez v. Garland*, 33 F.4th 626, 637–38 (2d Cir. 2022); *Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). We review factual findings under the "substantial evidence" standard and questions of law and the application of law to fact de novo. *Yanqin Weng v. Holder*, 562 F.3d 510, 513 (2d Cir. 2009); *see also* 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.").

## I. Asylum and Withholding of Removal

An applicant for asylum or withholding of removal has the burden to demonstrate past persecution or a well-founded fear or likelihood of future persecution. 8 U.S.C. §§ 1101(a)(42), 1158(b)(1)(A)–(B)(i), 1231(b)(3); 8 C.F.R. §§ 1208.13(b), 1208.16(b). To constitute persecution, the abuse must be inflicted by government officials or by actors the government is "unable or unwilling to control." *Scarlett v. Barr*, 957 F.3d 316, 328 (2d Cir. 2020) (quoting *Pan v. Holder*, 777 F.3d 540, 543 (2d Cir. 2015)). "Under the unwilling-or-unable standard, a finding of persecution ordinarily requires a determination that government authorities, if they did not actually perpetrate or incite the persecution, condoned it or at least demonstrated a complete helplessness to protect the victims." *Singh*

*v. Garland*, 11 F.4th 106, 114–15 (2d Cir. 2021) (quotation marks omitted). "Failure to report harm is not necessarily fatal to a claim of persecution if the applicant can demonstrate that reporting private abuse to government authorities would have been futile or dangerous." *Castellanos-Ventura v. Garland*, 118 F.4th 250, 254 (2d Cir. 2024) (cleaned up) (quoting *Matter of C-G-T-*, 28 I. & N. Dec. 740, 743 (B.I.A. 2023)).

Yunga Uyaguari alleged that members of indigenous opposition groups threatened and assaulted him because he hosted a pro-government radio program, and that he fled Ecuador without reporting this abuse. But the record does not compel a conclusion that the Ecuadorian government is unable or unwilling to control his abusers. *See Singh-Kar v. Bondi*, 137 F.4th 94, 102 (2d Cir. 2025) (affirming denial of asylum and withholding of removal where record did "not mandate a finding by a reasonable adjudicator that the . . . government is unable or unwilling to protect" the petitioner). Even having assumed credibility, the BIA was not required to find persuasive Yunga Uyaguari's assertion that there was nothing the government could do to help him.[1] *See Garland v. Ming Dai*, 593 U.S.

_____

[1] Yunga Uyaguari's argument that the IJ failed to make required credibility findings overlooks that the BIA assumed credibility on appeal. *See Yan Chen*, 417 F.3d at 271 (reviewing BIA's decision where it "decid[ed] the case on the

4

357, 371 (2021) ("[E]ven if the BIA treats an alien's evidence as credible, the agency need not find his evidence persuasive or sufficient to meet the burden of proof."). In addition to Yunga Uyaguari's failure to report, the agency reasonably relied on evidence that the Ecuadorian government would have been willing to intervene. Yunga Uyaguari presented supporting letters from officials in his hometown confirming that he was known to and respected by the local police and government; but these letters did not corroborate his claim that these authorities were unable to protect him from abuse by opposition parties. Yunga Uyaguari did not explain why he did not reveal the abuse when soliciting letters of support, so that the authors could have opined on their willingness and ability to protect him.

Moreover, contrary to Yunga Uyaguari's argument that the agency overlooked country conditions evidence, the IJ summarized that evidence, and "we presume that [the agency] has taken into account all of the evidence before [it], unless the record compellingly suggests otherwise." *Xiao Ji Chen v. DOJ*, 471

---

assumption, contrary to the IJ's finding, that [the petitioner's] testimony was credible").

F.3d 315, 336 n.17 (2d Cir. 2006).   Yunga Uyaguari has not identified evidence that the IJ overlooked that could have changed the outcome.

## II.   CAT

For similar reasons, there was no error in the denial of protection under the CAT.   An applicant for CAT relief has the burden to show a likelihood of torture, 8 C.F.R. § 1208.16(c)(2), "by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity," *id.* § 1208.18(a)(1). "Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene and prevent such activity."   *Id.* § 1208.18(a)(7); *see Khouzam v. Ashcroft*, 361 F.3d 161, 171 (2d Cir. 2004) (acquiescence to torture requires "that government officials know of or remain willfully blind to an act and thereafter breach their legal responsibility to prevent it").   "[F]ailure to ask for police help is not enough, by itself, to preclude a finding of acquiescence."   *Quintanilla-Mejia v. Garland*, 3 F.4th 569, 593 (2d Cir. 2021).   But Yunga Uyaguari had the burden to establish likely acquiescence, and the record supports the agency's conclusion that the government would not participate in or acquiesce to his torture. As discussed above, he testified that his abusers were

6

private actors opposed to the Ecuadorian government; the government was not aware that he was beaten or threatened; and he had a positive relationship with the local government and local police. He does not identify evidence that would have compelled the IJ to find that the government would learn of his abusers' intent to torture him and breach a legal responsibility to intervene. *Cf. id.* at 592 (holding that where "the agency's conclusion finds support in record evidence, [a petitioner] cannot secure CAT relief by pointing to conflicting evidence that might support—but not compel—a different conclusion").

Instead, Yunga Uyaguari argues that the BIA provided insufficient analysis and failed to conduct a de novo review of the sufficiency of the evidence. To the contrary, the BIA explained its decision, and its agreement with the IJ's reasoning is not a sufficient basis to conclude that it failed to review legal issues de novo. *See* 8 C.F.R. §§ 1003.1(d)(3), 1003.3(f) (BIA reviews factual findings for clear error and all other issues de novo).

## III. Post-Hearing Evidence

Yunga Uyaguari presses several arguments based on events in Ecuador after the IJ's decision. He asserts that (1) the BIA should have addressed both his request to take administrative notice of these events and his claim that Ecuador

had become more dangerous for him, as evidenced by the government's violent repression of protests by indigenous groups; (2) the BIA failed to address country conditions evidence submitted with his motion to reopen; and (3) the BIA should have considered whether remand to the IJ was needed to address this evidence. But he has not demonstrated error in the BIA's decision.

The BIA may—but is not obligated to—take administrative notice of commonly known facts. *See* 8 C.F.R. § 1003.1(d)(3)(iv); *Hoxhallari v. Gonzales*, 468 F.3d 179, 186 n.5 (2d Cir. 2006) (noting that the BIA "*may* always exercise independent discretion to take judicial notice of any further changes in a country's politics" (emphasis added)). Yunga Uyaguari asked the BIA to take notice of events surrounding protests by indigenous groups in 2022, but he acknowledged that similar events occurred before his hearing, and he argued that these incidents spoke to the likelihood of harm, which is an issue the BIA declined to reach because the state action finding was dispositive. There is thus no basis to conclude that administrative notice would have affected the outcome of the proceedings. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

8

To the extent that the BIA was presented with additional evidence on appeal—attached to the motion to reopen and cited in the brief—the issue before it was whether remand was warranted for further consideration by the IJ. *See* 8 C.F.R. § 1003.1(d)(3)(iv) ("If new evidence is submitted on appeal, that submission may be deemed a motion to remand and considered accordingly."). The movant has "a heavy burden" to show that "the new evidence offered would likely change the result of the case." *Matter of Coelho*, 20 I. & N. Dec. 464, 473 (B.I.A. 1992) (quotation marks omitted). We review the denial of remand for abuse of discretion.[2] *See Li Yong Cao v. DOJ*, 421 F.3d 149, 156 (2d Cir. 2005).

The BIA did not expressly parse the new evidence, but as noted, it was not

---

[2] The Government's position is that the BIA's ruling on the motion to reopen both granted reopening based on ineffective assistance and denied it based on new evidence, and that decision is not subject to judicial review because no petition was filed directly from that decision. The Government is incorrect. Even accepting the Government's position that the BIA denied reopening for consideration of additional evidence, the BIA reopened the proceedings on other grounds, so any interim ruling merged into the final order of removal from which Yunga Uyaguari timely petitioned for review. *See* 8 U.S.C. § 1252(b)(9) ("Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section."); *Nasrallah v. Barr*, 590 U.S. 573, 579–80 (2020) (explaining that "challenges arising from the removal proceeding must be consolidated in a petition for review" from the final order of removal (quotation marks omitted)).

required to do so, and we generally presume that all evidence has been considered. *Xiao Ji Chen*, 471 F.3d at 336 n.17. Moreover, the new evidence reflects that indigenous groups have had some electoral success, but not that this success has affected the government's willingness or ability to control opposition violence, and that the government has responded violently to protests by indigenous groups both before and after Yunga Uyaguari's hearing. It thus fails to undercut the IJ's determination—upheld by the BIA—that Yunga Uyaguari did not establish that the government was unwilling or unable to protect its supporters from indigenous groups.

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court